IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY McMAHON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 24-cv-9660 |
| | ) |
| S & M AUTO BROKERS, INC. | ) |
| | ) Jury Demand |
| Defendant. | ) |
| | ) |

# COMPLAINT

Plaintiff, Anthony McMahon ("McMahon" or "Plaintiff"), through his undersigned attorneys, complains against Defendant, S & M Auto Brokers, Inc. ("S&M" or "Defendant") as follows:

## Statement of the Case

1. On April 12, 2024, McMahon purchased a 2021 GMC Sierra 2500HD VIN 1GT59LE79MF202096 ("Sierra" or "Vehicle") from S&M Auto Brokers, Inc. for a price of $66,468.03. Exhibit 1. McMahon signed an Arbitration Agreement with S&M, agreeing to submit this dispute to the American Arbitration Association ("AAA") for binding arbitration. Exhibit 2. S&M refused to respond to the Arbitration Demand, though it was requested to do so by the AAA. Exhibit 3. After S&M refused to arbitrate, the AAA notified S&M that it had waived its right to arbitration, and that the parties could resolve their dispute in court. Exhibit 3. Therefore, S&M waived its right to require arbitration.

2. McMahon purchased the 2021 Sierra as a result of deception by S&M and its owner, Saed Ihmoud, General Manager, Mohammed Ihmoud, and salesman Jawad Ihmoud aka

Joe ("Joe"). Defendant misrepresented or omitted numerous material facts in the online advertisement for the Sierra, which McMahon viewed before deciding to go to S&M to consider purchasing it. The advertisement failed to disclose that the Sierra was in an accident, has structural damage, and is a rebuilt wreck.

3. When McMahon contacted S&M to discuss possibly purchasing the Sierra, the sales representatives of S&M misrepresented that the Sierra had never been in an accident and knowingly failed to disclose that the Sierra was in an accident, is a rebuilt wreck, and has structural damage making it dangerous to drive in violation of Illinois safety standards.

4. Had McMahon known the truth about the Sierra, he would not have purchased it.

5. Defendants' conduct in this matter is not an isolated incident. They have a pattern and practice of selling rebuilt wrecks and dangerous vehicles to unsuspecting consumers. Many consumers have submitted consumer fraud complaints against S&M and the Attorney General has investigated S&M for fraud. *Twyman v. S&M Auto Brokers*, 16 C 4182, 2016 WL 6082357, at *5 (N.D. Ill. Oct. 18, 2016).

6. Many consumers have filed fraud lawsuits and arbitrations against S&M. In one case, going back a few years, a Cook County jury awarded $90,000 in punitive damages against S&M for defrauding a consumer in the same manner that it defrauded McMahon. *Twyman*, 16 C 4182, 2016 WL 6082357, at *4 ("Significantly, in a recently released opinion, a Cook County Circuit Court found that S&M Auto Brokers, one of the defendants here, violated the Illinois Consumer Fraud Act by failing to disclose that a vehicle it sold had been in a prior accident and had frame damage, noting that the vehicle's bent frame imperiled the plaintiff's safety and finding that punitive damages were appropriate. *Tate v. S&M Auto Brokers Inc.*, 2014 M1-13229, slip op. at 7 (Ill. Cir. Ct. Sept. 26, 2016).").

7. S&M did not learn its lesson and its misconduct has continued unabated for many years. After *Tate*, S&M was the subject of another consumer fraud lawsuit like this one and *Tate* in federal court. In the *Tyman* case, S&M settled after the Court there found there could be large punitive damages potential liability based on the fraud that was pled. *Id.* at *4.

8. S&M has had numerous other lawsuits or arbitrations brought against it since *Tate* and *Twyman*. It has continued its fraudulent practices and has not changed its practices despite an Attorney General Investigation and many lawsuits.

9. McMahon is the latest victim in a long string of incidents. This case is brought to vindicate McMahon's rights and to put a stop to S&M's decade or more of the same misconduct through the entry of a substantial punitive damages award.

## Parties

10. Plaintiff, Anthony McMahon is a Michigan resident, residing at 9415 Grossman Road Manchester, MI 48158.

11. Defendant, S & M Auto Brokers Inc., is a corporation organized under the laws of Illinois with its principal place of business at 7825 W 95th Street Hickory Hills, IL 60457 and operates several used car dealerships in Chicago or the Chicago area.

## Jurisdiction and Venue

12. This Court has jurisdiction over this matter. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendant are completely diverse and the amount in controversy exceeds $75,000, excluding costs and interest. McMahon suffered in excess of $30,913.00 in actual damages. He is also entitled to punitive damages well in excess of $90,000 due to the willful and wanton nature of the Defendant's conduct, which is part of a long-standing pattern and practice of similar misconduct which needs to be punished and deterred.

13. Venue is proper in this district under 28 U.S.C. §1391(b)(2) because the events or omissions giving rise to Plaintiff's claims against Defendant occurred in this district.

## Facts

14. On or about April 8, 2024, McMahon was looking at the website "Auto Trader" and found the Sierra.

15. On or about April 9, 2024, McMahon researched the Sierra on Auto Check and the results claimed that the Sierra was not in an accident and had a clean title.

16. On or about April 9, 2024, McMahon spoke with an employee of S&M about the Sierra and was told that the Sierra was not in an accident and had a clean title.

17. On or about April 12, 2024, McMahon purchased the Sierra from S&M for $66,468.03. Exhibit 1.

18. On or about April 12, 2024, while driving the Sierra from S&M to McMahon's residence in Michigan, McMahon noticed that the Sierra kept pulling to the left and that the Sierra had a major steering issue. McMahon called Joe who sold McMahon the Sierra. Joe told McMahon to have the Sierra inspected for the source of the cause of the Sierra's pulling to the left and the steering issue.

19. On or about April 15, 2024, McMahon brought the Sierra to Clift Buick GMC in Adrian Michigan ("Clift GMC"), to inspect the Sierra. Exhibit 4. Upon an initial inspection Clift GMC concluded that the Sierra was in a major collision with a kink in the passenger side frame, the inner body behind the fender has a kink from the collision, repainted bolts to hide the collision, a broken radiator mount that is held together with zip ties, replaced AC condenser, and various other components replaced to hide the Sierra's structural damage. *Id*.

20. On or about April 17, 2024, McMahon spoke with Joe, an employee of S&M and told Joe that the Sierra was in a major collision, it suffered from frame damage, was a poorly rebuilt wreck, and it was unsafe to drive. McMahon told Joe that he wanted S&M to repurchase the Sierra as the accident and the major damage to the Sierra was not disclosed to McMahon prior to his purchase of the Sierra from S&M and that McMahon was told the Sierra was not in an accident and had a clean title. Joe told McMahon that S&M could not repurchase the Sierra from McMahon, but they could find him another similar Sierra.

21. S&M induced McMahon to purchase the Sierra through written and/or oral misstatements of material fact, half-truths, and/or omissions of material fact designed to conceal that the Sierra was in a major collision, has frame and structural damage, the passenger front inner body behind the fender has multiple creases from the collision, painted bolts in order to hide the collision, the radiator mount is damaged and is held together with zip ties, a replaced AC condenser, along with various other components that were replaced in order to conceal the collision, along with potentially more structural, mechanical, and/or fit and finish issues once the Sierra is broken down to make the various repairs, is dangerous to drive, and is worth substantially less than it was advertised.

22. S&M and/or its sales representative Joe, misrepresented and omitted numerous material facts to McMahon in conjunction with inducing him to purchase the Sierra.

23. S&M knowingly failed to disclose that the Sierra was in a major collision, has frame and structural damage, the passenger front inner body behind the fender has multiple creases from the collision, painted bolts in order to hide the collision, the radiator mount is damaged and is held together with zip ties, a replaced AC condenser, along with various other components that were replaced in order to conceal the collision, along with potentially more structural, mechanical,

and/or fit and finish issues once the Sierra is broken down to make the various repairs, and the Sierra is dangerous to drive.

24. S&M's sales representative Joe, told McMahon a number of half-truths which further concealed the true facts and history of the Sierra and created an affirmative duty to disclose that the Sierra was in a major collision, has frame and structural damage, the passenger front inner body behind the fender has multiple creases from the collision, painted bolts in order to hide the collision, the radiator mount is damaged and is held together with zip ties, a replaced AC condenser, along with various other components that were replaced in order to conceal the collision, along with potentially more structural, mechanical, and/or fit and finish issues once the Sierra is broken down to make the various repairs, and the Sierra is dangerous to drive.

25. Had McMahon known the truth about the Sierra, he would not have purchased it.

26. McMahon agreed to purchase a safe to operate vehicle from S&M.

27. As a result of S&M and S&M's sales representative, Joe's material misrepresentations, half-truths, and/or knowing omissions of material fact, McMahon decided to purchase the Sierra.

28. S&M and its sales representative Joe knew, or but for their recklessness, should have known, that the Sierra was unsafe to drive. Any vehicle dealer based on a simple inspection would have known the Sierra is unsafe to drive.

29. McMahon paid a total of $66,468.03 for the Sierra. McMahon paid: 1. Documentation Fee $358.03; 2. Sales Tax $1,739.00; 3. Registration and Title Fee $316; 4. ERT Fee $35.00; 5. Service Contract $3,500.00; and 6. Handling and Prep $699.00. Exhibit 1. McMahon tendered a $5,000.00 downpayment, a Trade-in Allowance of $24,000.00, and financed the remaining $37,468.03, resulting in a $66,468.03 sub-total. Exhibit1.

30. As a result of the Sierra's history and required repairs, the Sierra has a diminished value of at least $19,988.00.

31. McMahon suffered actual damages of at least $30,913.00 which includes the diminished value of the Sierra, excess finance charges, excess sales tax, and interest on the loan.

32. In addition, McMahon has suffered at least $10,000 in aggravation, inconvenience, and emotional distress damages.

33. S&M has a pattern and practice of violating the Illinois Consumer Fraud Act.

34. S&M committed similar conduct as herein including but not limited to in the following lawsuits: *Tate v. S&M Auto Brokers Inc.*, Cook County Case No. 2014 M1-13229; *Twyman v. S&M Auto Brokers, Inc.*, 2016-cv-04182 N.D. Ill. 2016; *Lambright v. S&M Auto Brockers, Inc.*, 2023 IL App (1st) 221944-U; and *Burgess v. S&M Auto Brokers, Inc.*, Cook County Case No. 2015 CH 09288.

35. McMahon seeks substantial punitive damages in excess of $90,000.00. Treble damages would be the minimum amount of punitive damages that should be awarded but the long standing nature of S&M's fraudulent behavior warrants an even larger award.

### S&M's Pattern and Practice of Selling Damaged Vehicles

36. S&M and its owners have a pattern and practice of selling rebuilt wrecks and concealing the true history and defects from buyers to induce them to purchase these substandard and dangerous cars. There have been several lawsuits and/or judgments against them for engaging in fraudulent behavior like what McMahon experienced. Further, there have been numerous complaints submitted to the Better Business Bureau ("BBB"). Finally, there have been consumer fraud complaints filed with the Illinois Attorney General's office, some of which are like this case. Exhibit 5.

37. In 2014, a consumer filed a complaint with the Illinois Attorney General's Office after she purchased a used Infiniti FX 35 from S&M in 2008. At the time of sale, she was told by an S&M sales associate that there was no previous damage. In 2012, the customer found out through an inspection at another dealer that the vehicle had been in a previous accident. S&M conducted a trade-in deal with her after she complained. She was again misled into purchasing a vehicle that had been in a previous accident. S&M told the customer that the vehicle had no issues. However, when driving home, the customer found that the rims were bent, water came in through the windshield, and the car would not start on a regular basis. Another dealer concluded that the vehicle had been in a previous accident. Twice, this same customer was misled by S&M into purchasing rebuilt wrecks. Another customer who filed a complaint with the Attorney General's Office purchased a vehicle from S&M in 2012. He later took it in for some work and found out that the vehicle had been in a previous accident and had a bent frame. Exhibit 6.

38. Thomas Martin ("Martin") made a BBB complaint against S&M. He purchased a used Infiniti from S&M. Exhibit 7. S&M told him that the car had not been in any accidents and declined his request for a Carfax report to verify S&M's representation. When Martin later tried to trade in the car and buy another, he found out from another dealer that the vehicle had a salvaged title due to frame damage. The vehicle was in two accidents.

39. The three lawsuits against S&M evidence a pattern and practice of the same misconduct found in this case. In *Tate v. S&M Auto Brokers Inc.*, Case No. 2014 M1 132291, S&M was held liable for selling Mary M. Tate ("Tate") a rebuilt wreck and fraudulently concealing and misrepresenting material facts about the 2011 Chevy Malibu's ("Malibu") condition and history. The Court found S&M acted willfully and wantonly and awarded punitive damages to Tate. Similar to the case at hand, Tate purchased the Malibu only to find out that it was actually a

8

severely damaged wreck that could have caused her great harm. S&M was caught red-handed when it produced the bill of sale from the auction where it bought the Malibu, which proved it had been on notice of the damage before selling it to Tate. Specifically, S&M knew that the Malibu had "frame/unibody" damage but concealed this from Tate. Exhibit 8.

40. *Burgess v. S&M Auto Brokers, Inc.*, Case No. 15 CH 09288, involves similar allegations of S&M misrepresenting and concealing the condition and history of a damaged and dangerous vehicle to make a profit from an unsuspecting customer. Joshua Burgess alleges that S&M misrepresented the condition of a 2011 Ford Explorer and S&M knew but failed to disclose that the vehicle had been in not one, but two accidents and was severely damaged as a result of the accidents. Similar to this case, several parts of the car had been found to have been replaced, rebuilt, and repainted. Also, like McMahon's Sierra, the Ford Explorer was unsafe to drive and a danger to the driver and others on the road. Exhibit 9.

41. Another example of S&M's pattern and practice involved another customer, Carmen Romo ("Romo"). *Romo v. S&M Auto Brokers, Inc.*, Case No. 2013 M1 104952. S&M sold a damaged wreck to Romo as well, by hiding the true history of the car from Romo. S&M not only sold Romo a rebuilt wreck, but also turned off the car's warning light, which turned on while Romo was driving home. Exhibit 10.

42. In *Twyman v. S&M Auto Brokers, Inc.*, 2016-cv-04182 N.D. Ill. 2016, S&M sold Donaldson Twyman ("Twyman") a rebuilt wreck that was in an accident, had frame damage, and was dangerous to operate. The Court found that punitive damages of at least 1.5 times Twyman's actual damages (the amount needed to give rise to federal diversity jurisdiction) was reasonable based on S&M's long history of fraudulent practices.

43. As evidenced by the above cases and the numerous complaints to the Illinois Attorney General and BBB, S&M has a pattern and practice of selling severely damaged cars with substandard repairs to its customers, and willfully concealing or misrepresenting material facts to its customers. S&M's practice of selling severely damaged vehicles to unknowing customers violates the Illinois Vehicle Code and poses a great public danger by placing unsafe cars on the road. This dangerous and repetitive misconduct warrants a substantial punitive damages award well in excess of $90,000 as S&M has yet to be stopped.

## COUNT I

**(Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act)**

44. McMahon repeats and realleges Paragraphs 1-43 herein.

45. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/2, states in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful…

46. Further, the Illinois Vehicle Code makes it "unlawful for any person to…knowingly permit to be driven or moved on any highway any vehicle…which is in such unsafe condition as to endanger any person or property…" 625 ILCS 5/12-101(a). Thus, S&M had a statutory obligation not to put an unsafe vehicle on the road by deceiving McMahon into purchasing an unsafe vehicle.

47. McMahon is a consumer within the meaning of 815 ILCS 505/1(e).

10

48. S&M's sale of the Sierra constituted the sale of merchandise in commerce as defined by 815 ILCS 505/1(b).

49. S&M and its sales representative Joe, misrepresented material facts in violation of the Consumer Fraud Act as alleged in paragraph 16 above.

50. S&M knowingly failed to disclose the defective condition of the Sierra to McMahon. S&M failed to disclose the following facts. The Sierra was in a major collision, has frame and structural damage, the passenger front inner body behind the fender has multiple creases from the collision, painted bolts in order to hide the collision, the radiator mount is damaged and is held together with zip ties, a replaced AC condenser, along with various other components that were replaced in order to conceal the collision, along with potentially more structural, mechanical, and/or fit and finish issues once the Sierra is broken down to make the various repairs, and the Sierra is dangerous to drive.

51. S&M had knowledge of these facts as it inspected the Sierra upon receipt and/or should have inspected the Sierra upon receipt. The condition of the Sierra is obvious to any knowledgeable person in the vehicle industry.

52. S&M and its sales representative, Joe, intended for McMahon to rely on their misrepresentations, half-truths, and/or omissions of material fact. S&M knew that a consumer, like McMahon, would not purchase the Sierra for the price he paid if he knew of its true condition.

53. Had McMahon known the truth about the Sierra, he would not have purchased it.

54. S&M and its sales representative Joe knew, or but for their recklessness, should have known, that the Sierra was unsafe to drive. Any vehicle dealer based on a simple inspection would have known that the Sierra is unsafe to drive.

55. As a direct and proximate result of S&M and its sales representative Joe's consumer fraud, McMahon suffered damages of at least $30,913.00 including, but not limited to:

      a. Paying an inflated price for the vehicle;

      b. Excessive interest;

      c. Excessive sales tax; and

      d. Finance charges that should not have been incurred.

56. In addition, McMahon has suffered at least $10,000 in aggravation, inconvenience, and emotional distress damages.

57. McMahon has the option of unwinding the transaction and seeking recission damages and will make such an election before trial.

58. S&M's conduct was willful and wanton, calling for the imposition of a substantial punitive damages award to punish and deter similar conduct in the future, and to stop S&M from continuing to violate the Illinois Vehicle Code by putting unsafe vehicles on the road.

59. S&M committed similar conduct to the fraud here which it was subject to including but not limited to in the following lawsuits: *Tate v. S&M Auto Brokers Inc.*, Cook County Case No. 2014 M1-13229; *Twyman v. S&M Auto Brokers, Inc.*, 2016-cv-04182 N.D. Ill. 2016; *Lambright v. S&M Auto Brockers, Inc.*, 2023 IL App (1st) 221944-U; and *Burgess v. S&M Auto Brokers, Inc.*, Cook County Case No. 2015 CH 09288.

60. S&M's dangerous fraud and recidivist behavior warrants a punitive damages award of at least $90,000.00.

WHEREFORE, McMahon requests that the Court enter judgment in his favor and against S&M as follows:

A. Actual damages in an amount to be proven at trial or recission of the transaction;

B. The costs incurred in this litigation, including expert fees;

C. Attorneys' fees;

D. Aggravation and inconvenience damages;

E. Punitive damages; and

F. Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to FRCP 38(b), Plaintiff requests a trial by jury on the claims so triable.

ANTHONY McMAHON

By: /s/ James V. DiTommaso
One of his attorneys

James V. DiTommaso
DiTommaso Law Group LLC
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
(630) 333-0000
jvd@ditommasolaw.com

Peter S. Lubin
Patrick Austermuehle
Lubin Austermuehle, P.C.
17W220 22nd Street, Suite 410
Oakbrook Terrace, IL 60181
630-333-0333
peter@l-a.law
patrick@l-a.law

Terrence Buehler
Law Offices of Terrence Buehler
417 North Marion Street
Oak Park, IL 60302
(312) 371-4385
tbuehler@tbuehlerlaw.com